## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

**REGIONS BANK**                                                    **CIVIL ACTION**

**VERSUS**                                                          **NO. 10-3388**

**KYLE D. TAUCH**                                                   **SECTION "D"(5)**

### ORDER AND REASONS

Before the court is the "Motion for Summary Judgment" (Doc. No. 13) filed by Plaintiff,

Regions Bank, (Regions) against Defendant, Kyle D. Tauch (Tauch).  A "Memorandum in

Opposition" (Doc. No. 18) was filed by Kyle D. Tauch.  Both Plaintiff and Defendant filed

supplemental briefs with leave of court.  (Doc. Nos. 21 and 24)   The motion, noticed for

submission on Wednesday, May 18, 2011, is before the court on the summary judgment record

without oral hearing.  Now, having considered the submissions of parties, the record and the

applicable law, the court finds that Regions' motion for summary judgment should be

GRANTED.

### I. Factual and Procedural Background

In its motion, plaintiff seeks summary judgment on liability and damages pursuant to a

Limited Guaranty Agreement between Regions and Tauch for $2,205,109.93, which is 25% of

the outstanding amount due, plus reasonable collection fees, attorney's fees and related third-

party expenses associated with enforcement of the Limited Guaranty Agreement. (Doc. 1-3 and

13-2/Exh. A-3 to Motion for Summary Judgment).

On October 8, 2010, Regions filed this diversity suit to recover monies due by the

guarantor of the obligations of the borrower, First KT Lending, L.L.C., pursuant to its default in

the repayment of more than $8 million due Regions under a Term Loan and Term Note (Doc. 1-2, 1-3/Exh. A-1 and A-2 to Affidavit of John W. Thornton, Jr. (submitted in support of Region's Motion for Summary Judgment)).

On December 31, 2007, Regions made a term loan to First KT Lending, LLC as is evidenced by the Term Loan in the amount of $8,627,095.08. (Pltf's Exh. A-1).  The Term Note was made pursuant to the Loan Agreement dated December 31, 2007.  (Pltf's Exh. A-2). Regions is the current holder of the Term Note. *See* Thornton Affidavit at ¶ 5 (Pltf's Exh. A).

In conjunction with Regions' loan to First KT, Kyle D. Tauch ("Tauch") executed and delivered to Regions a "Limited Guaranty Agreement" dated December 31, 2007. (Pltf's Exh. A-3).  First KT failed to pay when due the monthly interest payments on the Term Note for June 2010 and July 2010.  On August 19, 2010, Regions sent First KT and Tauch a notice of default, apprising them of the default and demanding full payment of all past-due amounts within ten (10) days.  (Pltf's Exh. A-4 to Thornton Affidavit).  First KT then defaulted on the Term Note in that First KT failed to pay the past due amounts set forth in the August 19, 2010 notice of default.  *See* Thornton Affidavit at ¶ 8.

After Regions sent the notice of default, partial payment of the past-due amounts was tendered by Chiron Equities, LLC on behalf of First KT by check no. 3251 dated September 3, 2010 in the amount of $21,444.94 drawn on an account with Allegiance Bank; however the aforesaid check was dishonored and returned for insufficient funds. (Pltf's Exh. A-5).   Neither First KT nor Tauch made any further payments or attempted payments on the past due amounts under the Term Note.  *See* Thornton Affidavit at ¶ 10.

First KT and Tauch failed to pay or cause to be paid the past-due amounts set forth in the

aforesaid notice of default, thereby constituting an "Event of Default" under the Term Note and the Loan Agreement.  *See* Thornton Affidavit at ¶ 11.  Regions elected and declared the entire principal amount of all Indebtedness (as defined in the Loan Agreement) outstanding, including interest accrued and all other charges and fees associated therewith, to be due and payable, all as set forth in the letter dated October 4, 2010 from Regions to First KT and Tauch – *i.e.*, the Notice of Acceleration.  (Pltf's Exh. A-6).  In the October 4, 2010 Notice of Acceleration, Regions formally demanded from Tauch payment in ful of the Maximum Amount guaranteed in the Limited Guaranty Agreement.  *Id.*

As of March 7, 2011, Tauch has made no payment to Regions in satisfaction of his obligation to pay the Maximum Amount.  *See* Thornton Affidavit at ¶ 15.  Regions submits that the amount due and owing to Regions by Tauch pursuant to the Limited Guaranty Agreement is $2,205,109.93 – *i.e.*, 25% of the sum of the principal plus interest through October 4, 2010 plus late charges.[1]

As discussed in greater detail below, Defendant contends that Regions has completely ignored other clear provisions  – *i.e.*, Section 1 which provide a dollar-for-dollar credit for capital expenditures as well as  Section 17 which provides for termination of the obligation if certain conditions are met.[2]  Nevertheless, in his Answer (Doc. No. 6), defendant raised *no* affirmative defenses, including set-off/recoupment or termination/extinguishment of the Limited

---

[1]*See* Thornton Affidavit at ¶ 16.

[2]*See* Defendant's Memorandum in Opposition at pp. 6-11 (Doc No. 18); Limited Guaranty at §§ 1, 17 (Doc. No. 18-3); Affidavit of Jay Krasoff at ¶¶ 18-26 (regarding insurance premiums and other capital expenditure made under Section 1 and approved by Regions) and at ¶¶ 27-33 regarding the Debt Service Ratio being greater than 1.12-1.0 during the three consecutive months of February 2009, March 2009 and April 2009) (Doc. No. 18-2).

Guaranty.[3] Simply stated, defendant's position is that there exist material issues of fact as to whether the Limited Guaranty Agreement was terminated, failing which, there exist material issues of fact as the amount owed.

First, Tauch contends that Regions ignores Section 1 of the Limited Guaranty, which provides for a dollar-for-dollar reduction in the amount guaranteed by Tauch if certain capital expenditures or insurance payments are made by the Guarantor or a related party. The Limited Guaranty provides at § 1 in pertinent part:

> It is the intention of the Guarantor and the Lender that the Guarantor be bound *in solido* with the Borrower, ..., but only to the extent of the Guarantor's Maximum Amount. Payments made by the borrower or by one or more of the other Obligors shall not affect, impair or reduce the liability of the Guarantor (except to the extent that the indebtedness had been reduced *pro tanto* by the amount of such payments, and except as otherwise specifically provided herein); however, **the Guarantor shall be entitled to a dollar-for dollar credit against the Guarantor's Maximum Amount** (excluding the recourse carve out items set forth above in subsections (I) through and including (viii) and any and all enforcement expenses including reasonable attorney's fees and disbursements that may be incurred by or on behalf of the Lender in enforcing any obligations and liabilities of the Guarantor hereunder, which are guaranteed hereby to their full dollar amount) **for** (a) all sums paid by the Guarantor (or any Related Party) with respect to the DIP loan (as defined by the Loan Agreement), **(b) all sums paid by the Guarantor (or any Related Party) with respect to taxes and insurance premiums unpaid by any Obligor,** ( c) any principal reduction to the Loans made by a repayment from any Claims Proceeds, and **(d) any capital investments made by the Guarantor or Related Party (or any entity which the Guarantor or Related Party controls) with respect to the Property, which such capital investments are approved by Lender,** and which such approval shall not be unreasonably withheld.[4]

---

[3]Federal Rule of Civil Procedure 8( c) entitled "Affirmative Defenses" states in pertinent part that: "In responding to a pleading, a party *must* affirmatively state *any* avoidance or affirmative defense...." *Id. See e.g., Miller v. Pride Int'l, Inc*., 2006 WL 1235959 (E. D. La. May 3, 2006) (holding defendants waived the affirmative defense of "set-off" by failing to plead it prior to the deadline for filing amended pleadings).

[4]*See* Limited Guaranty at §1 (all emphasis added) (Doc. No. 18-3/p. 3 of 11).

*Next*, Defendant submits that there are genuine issue of material fact regarding the amount of the reduction in the guaranteed amount for Section 1 capital investments and insurance expenditures.  With respect to reductions in guaranty amount, Defendant explains that, pursuant to subpart (d) set forth above, the Maximum Amount – the limit of Tauch's guaranty – is reduced dollar for dollar by any approved capital investments made by Tauch *or First KT* with respect to the property.   The Property at issue was substantially damaged during Hurricane Katrina.  Krasoff Affidavit at ¶ 15 (Doc. No. 18-2).    In early 2008, a property insurance settlement of $2,650,000.00 was reached with Beechgrove I and II's insurer, Landmark American Insurance Company.  *Id.* at ¶ 16.   Following the settlement, on March 19, 2008, Beechgrove I and II filed a motion in the Bankruptcy Court (1) to allocate the proceeds from the insurance settlement with Landmark between Beechgrove I and II and (2) to use the insurance proceeds for capital expenditures to the Property.  *See In re Beechgrove Redevelopment, LLC (Chapter 11),* E. D. La. Bkrtcy. Dkt. No. 07-12057 c/w 12058, Doc. No. 185.  First KT asserted a security interest in the insurance settlement proceeds.  *Id.*  at Doc. No. 204.

In response to Beechgrove I and II's motion and in light of First KT's security interest in insurance proceeds, on May 14, 2008, representatives of First KT and Tauch (Jay Krasoff and Eric Israel) met with William P. Carroll, Regions' Senior Vice President, at Regions' headquarters in Birmingham.  The purpose of the meeting was to obtain Regions' approval for capital investments to be made with respect to the Property using a portion of the insurance settlement proceeds.[5]  Defendant submits that, although First KT could have elected to use the insurance settlement proceeds for a principal reduction under the Loan Agreement, which would

---

[5]*See* Krasoff Affidavit at ¶¶ 17-18.

have also caused a corresponding reduction in the guaranty amount under Section 1, First KT and Regions agreed that use of the proceeds for capital investments was in the best interest of the parties.[6]  During the meeting, Mr. Carroll, on behalf of Regions, authorized substantial capital investments to be made in the Property and authorized the Beechgrove entities to replenish their operating accounts with a portion of the insurance settlement proceeds.[7]

Thereafter, on May 29, 2008, the bankruptcy court entered a consent order (1) allocating the insurance settlement proceeds between Beechgrove I and II and (2) authorizing the use of $1,380,000 of the insurance proceeds for certain capital expenditures.[8]  Ultimately, the $1,380,000 earmarked for capital investments by the May 29, 2008 Consent Order was actually spent by KT Lending on the approved capital investments.[9]  In sum, it is Defendant's contention that, pursuant to the clear language of Section 1 of the Limited Guaranty, these approved capital expenditures correspondingly reduced the guaranty amount dollar-for-dollar.

Additionally, Mr. Tauch contends that the guaranty amount was even further reduced by payment of Beechgrove I and II's insurance premiums in the amount $769,500, a portion of which also constitutes approved capital expenditures.  Again, Defendant contends that this amount could have also been used to reduce the principal under the Loan Agreement and, had this amount not been paid, the property would not have been able to maintain insurance.[10]

---

[6]*Id.* at ¶ 19.

[7]*Id.* at ¶ 20.

[8]*See* Consent Order signed May 29, 2008 (Tauch Exh. "D"/Doc. No. 18-5).

[9]*See* Krasoff Affidavit at ¶¶ 21-22.

[10]*Id.* at ¶¶ 23, 25 and 26.

Finally, Defendant contends that a genuine issue of material fact exists as to whether the Limited Guaranty was terminated.  In this regard, Mr. Tauch notes that Regions' motion for summary judgment seeking the maximum guaranty amount was $2,205,109.93 on the date its motion was filed assuming that there is no offset under Section 1 of the Limited Guaranty.[11]

Defendant further explains Regions ignores Section 17 of the Limited Guaranty which provides for the termination of the Limited Guarantee Agreement, if a certain debt service coverage ratio is maintained for three months.  *See* Limited Guaranty at § 17.

Tauch maintains that Section 17 of Limited Guaranty entitled "Termination" provides in pertinent part that: "Notwitstanding anything contained in this Agreement to the contrary, so long as no Event of Default has occurred and is continuing, and Section 5.03 of the Loan Agreement is effective, this Agreement shall terminate if the Debt Service Coverage Ratio (excluding the calculation for master leases) for three consecutive months is equal to or greater than 1.12 to 1.0."  (Doc. No. 13-2 at p. 9).   Defendant position is that, by Regions' own admission, no Event of Default had occurred prior to June 2010.  According to the Defendant, there are three standardized methods to calculate the principal and interest figure that forms the divisor of the Debt Service Coverage Ratio (DSCR) as defined by Section 5.03 of the Loan Agreement.  Defendant argues that, whether based on the Term Note, the Beechgrove Notes or Section 5.03 of the Loan Agreement, the DSCR was greater than 1.12 to 1.0 during the three consecutive months of February 2009, March 2009 and April 2009 and, therefore, summary judgment in Regions' favor is improper.

Notwithstanding the foregoing, the court notes that it is undisputed that First KT never

---

[11]*See* Regions' Motion for Summary Judgment at p. 2 (Doc. No. 13).

purchased/acquired the Beechgrove properties,[12] which is clearly a necessary condition precedent to invoking the termination provision in Section 17 of the Limited Guaranty. More particularly, the provisions regarding the Debt Service Coverage Ratio ("DSCR") in Section 17 of the Limited Guaranty are not effective unless First KT purchases the Beechgrove properties pursuant to Section 5.03 of the Loan Agreement.

Section 17 of the Limited Guaranty provides:

> Notwithstanding anything contained in this Agreement to the contrary, **so long as** no Event of Default has occurred and is continuing, and **Section 5.03 of the Loan Agreement is effective**, this Agreement shall terminate if the Debt Service Coverage Ration (excluding calculation utilizing the master leases) for three consecutive months is equal to or greater than 1.12 to 1.0.[13]

Section 5.03 of Loan Agreement provides:

> Commencing on the first day of the month following the date that is one (1) year **after the date the Property is acquired by Borrower or a Related Party,** and tested on the same day of each month thereafter until the Loan is paid in full, **the Borrower shall maintain a Debt Service Coverage Ratio ....**[14]

Suffice it to say, Section 5.03 of the Loan Agreement has never come into effect because it is clearly and expressly conditioned on First KT's purchase/acquisition of the property, which has not occurred. Accordingly, the provisions of Section 17 of the Limited Guaranty have no application considering the undisputed fact that First KT did not purchase the property – *i.e.*, "the land and improvements located at 901-946 Beechgrove Blvd., Westwego, Louisiana."[15]

---

[12]S*ee* Tauch's Supplemental Memorandum at p. 3 (admitting "First KT did not purchase the Beechgrove properties") (Doc. 22-2).

[13]*See* Limited Guaranty at § 17 (emphasis added) (Doc. 18-3).

[14]*See* Loan Agreement at § 5.03 (emphasis added) (Doc. 18-4).

[15]*See id.* at § 1.02.

## II. Summary Judgment Standard

Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56( c).

The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact.  *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir.1992).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby. Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id*.

## III.  Discussion

### *Louisiana Law Applies*

The Note and Loan Agreement contain a choice of law clause stating that Louisiana law applies.  Additionally, the Limited Guaranty Agreement discussed above contains a choice of forum provision which states that the obligations will be enforced by the courts of Louisiana.

### *Suretyship or Guaranty*

A contract of guaranty is the substantial equivalent of a contract of suretyship.[16]

---

[16]LSA-R.S. §10:39 ("'Surety' includes a guarantor or other secondary obligor.").

9

Suretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so.[17]   Suretyship cannot be presumed and must be express and in writing.[18]  "Suretyship must be express and in writing."  Louisiana Civil Code article 3040 provides: "Suretyship may be qualified, conditioned, or limited in any lawful manner."[19]   Louisiana Civil Code article 3044 provides that: "An ordinary suretyship is one that is neither a commercial suretyship nor a legal suretyship.  An ordinary suretyship must be strictly construed in favor of the surety."[20]

The Louisiana Supreme Court has stated the following with respect to contracts of guaranty:

> Contracts of guaranty or suretyship are subject to the same rules of interpretation as contracts in general.  Agreements legally entered into have the effect of laws on those who formed them and must be performed with good faith.  Courts are bound to give legal effect to all such contracts according to the true intent of the parties, and this intent is to be determined by the words of the contract when these are clear and explicit and lead to no absurd consequences.[21]

Louisiana Civil Code article 2046 states that "when the words of a contract are clear and

---

[17]La. Civ. Code arts. 3035 and 3036.

[18]La. Civ. Code art. 3038.

[19]La. Civ. Code art. 3040.

[20]La. Civ. Code art. 3044; *see also Certified Finance, Inc. v. Bates*, 749 So.2d 687, 689 (La. App. 1st Cir. 1998) (noting that *Nicholson and Loup, Inc. v. Carl E. Woodward, Inc*. 596 So.2d 374 (La. App. 4th Cir. 1992) and *Bossier Medical Properties v. Abbot and Wms. Const*. Co. of La, 557 So.2d 1131 (La. App. 2nd Cir. 1990) stand for the proposition that a suretyship contract binds a surety to satisfy the principal of the entire obligation, unless that suretyship contract is limited).

[21]*Ferrell v. South Central Bell Tel. Co.,* 403 So.2d 698, 700 (La. 1981) (citations omitted); La. Civ. Code art. 1983 ("Contracts have the effect of law for the parties and may be dissolved through the consent of the parties or on grounds provided by law.  Contracts must be performed in good faith.").

explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[22]   "When a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law."[23]

As noted at the outset, the Limited Guaranty Agreement is clear and unambiguous. Moreover, Tauch as much as admits that, absent the contractual defenses he only now raises and then only in response to Regions' Motion for Summary Judgment, the Limited Guaranty would be the law between the parties and summary judgment would be appropriate.

### Waiver of Affirmative Defenses

Plaintiff maintains that, in his Answer (Doc. No. 6), Defendant did not specifically raise any affirmative defenses, including set-off/recoupment, compensation, termination or extinguishment or any other defenses in avoidance of his contractual obligations and thus waived same.  This court agrees.

Federal Rule of Civil Procedure 8( c) states that, in responding to a pleading, "a party must affirmatively state any avoidance or affirmative defense, including" but not limited to "accord and satisfaction," "release" and "payment," *inter alia*.   Most notably, at the outset, the rule sets forth the residuary clause – "any other matter constituting avoidance or affirmative defense. *Id*.

---

[22]La. Civ. Code art. 1848; *Blalock v. Lord*, 927 So.2d 1142, 1151(La. App. 3rd Cir. 2006).

[23]*Wooley v. Lucksinger*, 2011 WL 1205136 * 28 (La. April 1, 2011)(citing *Sims v. Mulhearn Funeral Home, Inc.*, 2007–0054 p. 10 (La. 5/22/07), 956 So.2d 583, 590; *Louisiana Ins. Guar. Ass'n. v. Interstate Fire & Cas. Co.*, 1993–0911 p. 7 (La. 1/14/94), 630 So.2d 759, 764 ("The determination of whether a contract is clear or ambiguous is a question of law.")).

The Fifth Circuit has observed that: "In the years since adoption of the rule, the residuary clause has provided the authority for a substantial number of additional defenses which must be timely and affirmatively pleaded."[24]   Failure to plead an affirmative defense may constitute a waiver and warrant the subsequent exclusion of the defense from the case.[25]   A defendant must plead an affirmative defense with enough specificity or factual particularity to give the plaintiff fair notice of the defense that is being advanced.[26]   Under the liberal pleading and amending guidelines of the Federal Rules, a party has ample opportunity to assert an affirmative defense but must raise it at a time and in a manner consistent with the Rules.[27]   An affirmative defense may be raised in a motion for summary judgment, but only if that motion is the first pleading responsive to the substance of the allegations.[28]   Failure to do so constitutes waiver.[29]

It clear from the authorities cited herein that set-off/recoupment and

---

[24]*Ingraham v. U. S.,* 808 F.2d 1075, 1078 (5th Cir. 1987).

[25]*Morris v. Homco Int'l, Inc.,* 853 F.2d 337, 342-43 (5th Cir. 1988) (citing *Trinity Carton Co. v. Falstaff Brewing Corp.,* 767 F.2d 184, 194 (5th Cir. 1985), *cert. denied,* 106 S.Ct. 1202 (1986)).

[26]*Automated Med. Labs. v. Armour Pharm. Co.,* 629 F.2d 1118, 1122 (5th Cir. 1980) ("Although absolute specificity in pleading is not required, fair notice of the affirmative defense is."); *Ingraham,* 808 F.2d at 1079 ("A defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense."); *Lebouef v. Island Operating Co., Inc.,* 342 Fed.Appx. 983, 984, 2009 A.M.C. 2701 (5th Cir. 2009) (unpublished) (holding "the defendant must provide at least some information that alerts the plaintiff to what the alleged problem is" and the "unelaborated statement" of "failure to state a claim" is insufficient to preserve an affirmative defense).

[27]*Automated Med. Labs.,* 629 F.2d at 1122 ("The court and the opposing party must be timely advised of the intended defense.").

[28]*United States v. Burzynski Cancer Research Inst.,* 819 F.2d 1301, 1307 (5th Cir.), *cert denied,* 108 S.Ct. 1026 (1988).

[29]*Woodfield v. Bowman,* 193 F.3d 354, 362 (5th Cir. 1999).

termination/extinguishment[30] are affirmative defenses under Louisiana law.[31]  In this case, the pleading deadline expired months ago (Feb. 12, 2011), plaintiff's and defendant's expert report deadlines expired on April 12, 2011 and May 20, 2011, respectively, and the discovery deadline expires in less than a month.  The prejudice to Plaintiff in allowing any such a late amendment to assert affirmative defenses under Louisiana law is manifest.  Most notably, even at this late date, the defendant has not even requested leave to amend.

Defendant argues in his Supplemental Memorandum that: "Tauch's answer [at ¶ 25] clearly put Regions on notice that defenses would be raised as this case progressed to trial."[32] This court is not convinced.  Paragraph 25 of Tauch's answer simply states: "Defendant further reserves the right to supplement and amend this answer upon further investigation." (Doc. 6 at ¶ 25).  Paragraph 25 and even Defendant's Answer construed as a whole is devoid of the requisite specificity or factual particularity necessary to place the Plaintiff on notice of any affirmative defenses, much less offset and extinguishment or any other defense (contractual or not) seeking avoidance of contractual obligations.

This court is not persuaded by Defendant's citation of the Third Circuit's decision in

---

[30]"Recoupment is a demand asserted to diminish or extinguish the plaintiff's demand that arises out of the same transaction forming the basis of the plaintiff's claim; setoff, on the other hand, arises out of a transaction extrinsic to the plaintiff's claim."  *Matter of Gober,* 100 F.3d 1195, 1207 (5th Cir. 1996).

[31]*Doster Const. Co., Inc. v. Rutman,* 1987 WL 11510 (E. D. La. 1987) (Schwartz, J.) (noting set-off is an affirmative defense, citing *Trinity Carton Co. v. Falstaff Brewing Corp.,* 767 F.2d 184, 189 (5th Cir. 1985) and denying motion for relief from judgment).  *See also* La. Code Civ. P. art 1005 (The answer shall set forth affirmatively ... extinguishment of the obligation in any manner ... and any other matter constituting an affirmative defense").

[32]*See* Defendant's Supplemental Memorandum at p. 5 (referring to his answer at ¶ 25) (Doc. No. 24).

*Elliott & Frantz, Inc. v. Ingersoll-Rand Co.,* 457 F.3d 312 (3rd Cir. 2006) and corresponding argument that his assertion of a contractual right to defeat Regions' claim is considered a general defense and not an affirmative defense that must be pled or waived.  That may well be the governing law in the Third Circuit and also in New Jersey;[33] however, it is not governing law in either the Fifth Circuit or Louisiana.[34]   Suffice it to say, the aforesaid Third Circuit case is inapposite.

The Fifth Circuit has noted that a "defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense."[35]  By failing to plead "avoidance" or any affirmative defenses as required by Rule 8( c) until all of the *critical* pre-trial deadlines have

---

[33]In *Frantz, Inc. v. Ingersoll-Rand Co.,* a diversity case decided under New Jersey law, the Third Circuit observed:
> "Matters treated as affirmative defenses under state law are generally treated the same way by federal courts in diversity cases."  While we recognize that the affirmative defenses listed in N.J. Ct. R 4:5-4 "were not intended to be an exhaustive listing," Elliott & Frantz does not cite any authority, nor can we find any, requiring that a party assert as an affirmative defense in New Jersey a claim that a contract by its express terms could be and was terminated without cause....  Here, however, Elliot & Frantz surely should have understood from Ingersoll-Rand's answer that it was relying for a defense on its right to terminate the Agreement without cause.

457 F.3d 312, 321 n. 6 (3rd Cir. 2006).

[34]*See* Note 27, *supra*, and accompanying text.  *See also Fejta v. Werner Enterprises, Inc.,* 412 F.3d 155 (La. App. 4th Cir.) ( holding that, because contractual defenses were not affirmatively pled, the trial court did not err when it refused to receive evidence of contractual defenses during trial), *writ denied,* 415 So.2d 953 (La. 1982); *Natchez Pecan Shelling Co. v. Chas. P. Wagner & Bro., Inc*., 70 So.2d 598, 600 (La. App. Orleans Mar. 8, 1984) ("Matters of defense set up in avoidance or extinguishment of an obligation admitted or proved to have once existed must be specially pleaded."); *Byrne v. Hibernia Nat. Bank,* 31 La. Ann. 81, 1879 WL 7219 at * 2 (La. 1879) ("The matters of defense which must be specially pleaded are those which set up in avoidance or extinguishment of an obligation admitted or proved to have once existed.").

[35]*Ingraham*, 808 F.2d at 1079.

14

passed, defendant waived said defenses in this case.[36]   It is clear on the summary judgment record and disturbing at best, that long before suit was filed, Tauch was fluent with the defenses he only now seeks to raise, but only in opposition to Regions' Motion for Summary Judgment. It is indeed a gross understatement to say that Defendant failed to raise any of his defenses in pragmatically sufficient time.  Regions is unquestionably prejudiced in its ability to respond.[37]

In any event, it is clear on the face of the summary judgment record that, by its terms, the Limited Guaranty Agreement was not terminated pursuant to the provisions of Section 17.[38] Indeed, the DSCR provisions are irrelevant and could not have caused the termination of the guaranty in light of the undisputed fact that First KT never acquired the subject property. Accordingly, summary judgment in favor of Regions is warranted.

**IT IS ORDERED** that Regions' Motion for Summary Judgment is GRANTED.

New Orleans, Louisiana, this 24th day of May, 2011.

_____
**A. J. McNAMARA**
**UNITED STATED DISTRICT JUDGE**

---

[36]*See e.g., Miller v. Pride Offshore*, 2006 WL 1235959 (E. D. La. May 3, 2006) (held waiver of defense of set-off by not affirmatively pleading the defense in answer).

[37]*See KWP Financial I, Inc. v. Harlan,* 100 F.3d 953 *1 (5th Cir. 1996) (unpublished) (In this case involving the appeal of summary judgment on a promissory note and guaranty, wherein appellant contended that his off-set claim was not properly addressed, the Fifth Circuit held that "[c]laims of set-off are affirmative defenses which must be raised in defendant's first responsive pleading, or they are lost," citing *Davis v. Odeco*, 18 F.3d 1237, 1245 (5th Cir.), *cert. denied*, 115 S.Ct. 78 (1994) and Rule 8( c)).

[38]*See* Notes 13 -15, supra, and accompanying text at p. 8 hereinabove.