UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LSREF2 BARRON, LLC                                          CIVIL ACTION

VERSUS                                                      NO. 10-3388

KYLE D. TAUCH                                               SECTION "L" (5)

ORDER & REASONS

The Court has pending before it a single issue on remand from the U.S. Court of Appeals for the Fifth Circuit: the application of Louisiana Civil Code Article 2652 to this case. The Court has reviewed the briefs and the applicable law and heard oral argument, and now issues this Order and Reasons.

I.      BACKGROUND

This case arises out of a loan agreement between former Plaintiff Regions Bank and non-party First KT Lending, LLC ("First KT"), and a guaranty agreement of that loan signed by Defendant Kyle Tauch. In December 2007, Regions made a loan to First KT, and First KT executed a promissory note (the "Note") to Regions. As security for that loan, Tauch executed a Limited Guaranty Agreement (the "Limited Guaranty") in which he personally guaranteed twenty-five percent of the loan amount of $8,627,095.08, plus various expenses and collection costs. The Limited Guaranty included provisions that would extinguish the guaranty entirely or reduce the maximum amount owed by the amount of payments made by Tauch or related parties for taxes, insurance premiums, or capital improvements to the related property.[1]

---

[1] The purpose of Regions' loan to First KT was for First KT to purchase promissory notes issued by two entities that own an apartment complex in Westwego, Louisiana.

First KT defaulted on the loan, and Regions filed suit against Tauch to enforce the Limited Guaranty. The case was assigned to Judge McNamara. Tauch filed an answer that denied certain allegations of the complaint but did not plead any affirmative defenses. (Rec. Doc. 6). Plaintiff Regions filed a motion for summary judgment and argued that it was entitled to judgment as a matter of law in its favor on the full amount of the guaranty. (Rec. Doc. 13). Defendant Tauch opposed summary judgment, arguing that there were factual disputes regarding payments he had made or ordered made that would reduce the amount owed on the guaranty, pursuant to the terms of the guaranty. (Rec. Doc. 18). In response, Regions argued that Tauch had waived the right to assert those contractual terms by failing to plead them in his answer as affirmative defenses. (Rec. Doc. 21).

On May 24, 2011, the Court issued an Order and Reasons granting the motion for summary judgment. (Rec. Doc. 30). The Order and Reasons concluded that the contractual terms Tauch asserted to reduce or eliminate his liability under the guaranty were affirmative defenses, and by failing to plead them in his answer, he had waived those defenses. On the same day, the Court entered Judgment against Tauch in the amount of $2,205,109.93, plus reasonable attorneys' fees. (Rec. Doc. 31). On June 9, 2011, the case was reassigned to this Section. (Rec. Doc. 34). Regions Bank and Tauch both filed motions to amend the Judgment. (Rec. Docs. 35, 36). This Court granted Regions' motion and denied Tauch's motion (Rec. Doc. 47), and entered an Amended Judgment on August 11, 2011 (Rec. Doc. 48). Tauch then filed a notice of appeal and a motion to stay execution of the judgment or for a reduced bond (Rec. Doc. 52), which has not been ruled on.

On September 22, 2011, shortly after the notice of appeal was filed, Regions Bank moved

in this Court to substitute LSREF2 Baron, LLC ("Baron") as the Plaintiff in this case. (Rec. Doc. 55). In the motion, Regions Bank stated:

> On July 22, 2011, Regions transferred to [Baron] all of Regions' right, title, and interest in and to any and all Judgments in this proceeding, pursuant to a Notarial Act of Assignment of Judgment. Regions also transferred to [Baron] all of Regions' right, title, and interest in and to the Term Note, Loan Agreement, Security Agreement, and Limited Guaranty Agreement underlying this litigation.

(Rec. Doc. 55 at ¶ II). The Court granted the motion. (Rec. Doc. 56).

Subsequently, at the Fifth Circuit, Tauch sought and received a remand to this Court "for the limited purpose of determining the price paid for the sale and assignment, and, if necessary determination of appellant's right to extinguish judgment under Louisiana Civil Code article 2652." (Order of the Fifth Circuit, Rec. Doc. 66). The parties have subsequently conducted discovery on that issue, including two motions to compel. (Rec. Docs. 69, 73).

One of the documents produced during discovery is the "Sale and Assignment Agreement" (the "Agreement") between Regions and Baron. (Rec. Doc. 100-1 at 1-95). This Agreement states in its Recitals:

> A. Seller [Regions Bank] is the holder of those certain promissory notes (collectively, the "Assets", and individually an "Asset") . . . . Information concerning each Asset and the principal balance outstanding thereunder is summarized on the attached Exhibit A.
>
> . . .
>
> C. Seller has gathered the Loan Documents . . . and certain other documents and instruments which it in its sole discretion has deemed relevant to the Assets, which . . . might include: . . . guarantees (such Loan Documents and other documents and instruments . . . are herein called the "Delivery Documents").

3

   D. Seller and Buyer [Baron] have agreed that Seller will irrevocably sell, transfer and assign to Buyer (i) the Assets, the Delivery Documents, and . . . all other rights of Seller, as lender, for each Asset . . . (collectively, the "<u>Assigned Rights</u>") . . . .

*Id.* at p. 1. The relevant entry in Exhibit A is as follows:

| TransactionID | LoanID | TransactionName | Loan_Name | RF_Unpaid_Prin_Balance |
|---|---|---|---|---|
| 5353 | 5926 | First KT | First KT | 8,627,095.08 |

*Id.* at p. 32.

  The Agreement further provides:

   1. **Sale and Assignment, Purchase Price**. Subject to the terms and conditions of this Agreement:

  (a) Seller shall sell, transfer, assign, grant and convey unto the Buyer, its successors and assigns, at the Closing (as defined below) the Assigned Rights and the Property . . . .

  (b) In full payment for the Assigned Rights and the Property, Buyer shall pay to Seller [REDACTED] of the unpaid principal balance of the Assets and Property as of the Closing Date . . . .

  (c) At Closing, Seller shall deliver or cause to be delivered to Buyer copies or originals of the Delivery Documents.

  (d) At Closing, Buyer shall expressly assume all of Seller's duties, obligations and responsibilities with respect to the Assigned Rights . . . .

*Id.* at pp. 1-2, ¶ 1.

## II. PRESENT MATTER

  The issue currently before the Court is the application of Louisiana Civil Code Article 2652 to this case. Tauch argues that Regions Bank sold the Judgment against him to Baron for $0, and therefore, under Article 2652, Tauch has the right to extinguish his obligation to Baron

by paying that amount. Baron argues that the requirements of Article 2652 have not been met because Regions Bank actually sold Baron the promissory note itself, rather than the associated litigious right. Furthermore, Baron argues that even if Article 2652 does apply, Tauch should be require to pay the purchase price of the note, rather than the purchase price of the specific litigious right.

### III. LAW AND ANALYSIS

#### A. Sale of Litigious Rights

Louisiana Civil Code Article 2652 provides:

> When a litigious right is assigned, the debtor may extinguish his obligation by paying to the assignee the price the assignee paid for the assignment, with interest from the time of the assignment.
>
> A right is litigious, for that purpose, when it is contested in a suit already filed.
>
> Nevertheless, the debtor may not extinguish his obligation when the assignment has been made to the co-owner of the assigned right, or to a possessor of the thing subject to the litigious right.

The Supreme Court of Louisiana has stated that the original purpose of Article 2652 "was primarily 'to prevent the purchasing of claims from avarice or to injure the debtor' and also 'to favor the party against whom the matter in litigation is transferred over one who speculates in law suits.'" *Clement v. Sneed Bros.*, 116 So.2d 269, 272 (La. 1959) (quoting *Smith v. Cook*, 180 So. 469, 473 (La. 1938)). It does so by removing the financial incentive from the assignment of litigious rights. *See United States v. 12,918.28 Acres of Land in Webster Parish, La.*, 50 F. Supp. 712, 721-23 (W.D. La. 1943) (tracing the "severe condemnation of the sale of a litigious right" under Roman and French law and its codification in the Louisiana Civil Code).

**B.     Analysis**

    **1.     Choice of Law**

Baron briefly argues that the law of Louisiana does not apply here because the Sale and Assignment Agreement provides that it shall be governed by Alabama law, unless displaced by federal law. (Rec. Doc. 100-1 at p. 18, ¶ 21). Tauch replies that this clause is irrelevant, because he is not a party to the Sale and Assignment Agreement. Furthermore, Tauch points out that the Limited Guaranty is made under Louisiana law (Rec. Doc. 18-3 at p. 10, ¶ 19(b)), and that former Plaintiff Regions Bank argued its motion for summary judgment under Louisiana law (Rec. Doc. 13-3 at 6). Moreover, Tauch notes that the Limited Guaranty provides that a successor or assignee of Regions Bank—such as Baron—will be bound by all terms of the Limited Guaranty, including its forum selection clause. (Rec. Doc. 18-3 at p. 9, ¶ 18(c)). Finally, Tauch argues that if a party were able to avoid Article 2652 simply by selling or assigning a litigious right under the law of a different state, Article 2652 would be rendered completely toothless. For the reasons cited by Tauch, the Court agrees that Louisiana law governs this portion of the dispute.

    **2.     Application of Article 2652**

        **a.     Assignment**

While the parties agree that Regions assigned to Baron the Note itself, they dispute whether Regions assigned the Limited Guaranty (and the Judgment) as well. Tauch argues that Regions did sell and assign to Baron its rights under the Limited Guaranty and the Judgment. Tauch argues that this fact is clear under the plain language of the Agreement: the Recitals say that "Seller will irrevocably sell, transfer and assign to Buyer . . . the Delivery Documents" (Rec.

Doc. 100-1 at p. 1, ¶ D), and the Agreement says that Regions "shall sell, transfer, assign, grant and convey . . . the Assigned Rights" to Baron, *id.* at ¶ 1(a). Baron, however, argues that Regions sold *only* the Note, and Baron received the Limited Guaranty as a matter of law. In other words, Baron argues that the Limited Guaranty is an accessory obligation to the Note, so when Regions sold the Note to Baron, the Limited Guaranty necessarily went along with it.

Regardless of whether the Limited Guaranty is an accessory obligation to the Note, the Agreement specifically and explicitly provides that Regions would "sell, transfer, assign, grant, and convey" the Assigned Rights, including the Limited Guaranty, to Baron. Thus, the plain text of the Agreement compels the conclusion Regions transferred the Limited Guaranty to Baron in addition to the Note itself.[2]

### b.    Consideration

The Supreme Court of Louisiana has held that Article 2652 does not apply to rights transferred for "nil." *Independent Ice & Distilled Water Mfg. Co. v. Anderson*, 30 So. 272, 273 (1901). Accordingly, to support the argument that Article 2652 does apply in this case, Tauch argues that there was consideration for entire sale. Tauch points out that according to the Agreement, the parties agreed to the sale "in consideration of the promises contained herein and other good and valuable consideration." (Rec. Doc. 100-1 at p. 1). Conversely, Baron argues that there was consideration only for the transfer of the Note itself; the Limited Guaranty, Baron claims, was transferred without consideration.

---

[2] Furthermore, Regions Bank has already represented to this Court that it transferred the Limited Guaranty and the Judgment to Baron in support of its motion to substitute. Since the Court has already granted Regions Bank's motion on this basis, it would be illogical for the Court now to hold that no such transfer took place.

Again, the express terms of the Agreement contradict Baron's argument. The provision of the Agreement noting the existence of consideration does not exclude "Delivery Documents" such as the Limited Guaranty; on the contrary, the "Assets," such as the Note, and the "Delivery Documents," such as the Limited Guaranty, are lumped together and described as "Assigned Rights" that "Seller shall sell, transfer, assign, grant and convey unto Buyer." *Id.* at ¶¶ A, C, D, 1(a). In fact, the Agreement specifically states that the Purchase Price will be "[i]n full payment for the Assigned Rights and the Property." *Id.* at ¶ 1(b). Therefore, the exception for rights transferred for "nil" does not apply in this case.

### 3. Purchase Price

On this point, the parties essentially reverse their arguments relating to consideration. Tauch argues that under the Agreement, Baron did not pay anything for the assignment of the Limited Guaranty or the Judgment, and that therefore, Tauch is entitled to extinguish the obligation for $0. Tauch emphasizes that the Agreement distinguishes between "Assets" and "Delivery Documents." Specifically, the Agreement defines "Assets" as "those certain promissory notes . . . evidencing the indebtedness of the party or parties therein listed." (Rec. Doc. 100-1 at ¶ A). In contrast, the "Delivery Documents" are defined as "the Loan Documents . . . and certain other documents and instruments which [Seller] in its sole discretion has deemed relevant to the Assets," possibly including "guarantees." *Id.* at ¶ C. Essentially, Tauch argues that Baron paid the purchase price for the Assets only, and paid nothing for the associated Delivery Documents, such as the Limited Guaranty and the Judgment. Therefore, Tauch argues that he should be able to extinguish the obligation against him for $0.

Baron argues that Article 2652 applies only "if the Court . . . hold[s] that Baron

purchased the Note and all related accessory obligations (including the Limited Guaranty) as a 'package,'" (Pl.'s Mem., Rec. Doc. 104 at 9), in which case Tauch should be required to pay "the same percentage of the judgment that Baron paid Regions on the principal amount of the Note," *id.* at 9-10. In other words, Baron argues, in order to extinguish the judgment against him, Tauch should have to pay what Baron paid for the Note, the Limited Guaranty, and the Judgment.

The Agreement is clear that payment was made "for the Assigned Rights and the Property." (Rec. Doc. 100-1 at p. 2, ¶ 1(b)). And as defined above, the "Assigned Rights" include both "Assets," such as the Note, and "Delivery Documents," such as the Limited Guaranty. Tauch attempts to draw a greater distinction between the "Assets" and the "Delivery Documents" by pointing out that the Agreement treats them differently in some respects—for example, the Agreement gives Baron a "Conditional Right to Require [Regions] to Refund or Repurchase" an "Asset," but not a "Delivery Document." *Id.* at p. 12, ¶ 13(a). This may support a conclusion that a greater portion of the Purchase Price was intended for the "Assets," but it cannot override the clear statement in ¶ 1(b) that payment was made "for the Assigned Rights" (not "for the Assets" only). Moreover, the Court has already concluded—in Tauch's favor—that the Limited Guaranty was not a right transferred for "nil." A holding that Tauch has the right to extinguish the Limited Guaranty for "nil" would contradict that earlier conclusion.

At the same time, because payment covered both the Note and the Limited Guaranty, Baron is incorrect that payment should be allocated 100% to the Limited Guaranty. "If a litigious right is transferred with a non-litigious right in a lump sum transaction, an apportionment must be made in order to determine the amount of reimbursement." *Slocum-Stevens Ins. Agency, Inc. v. Int'l Risk Consultants, Inc.*, 666 So.2d 352, 357 (La. App. 1995). *writ denied*, 669 So. 2d 399

(citing *Martin Energy Co. v. Bourne*, 598 So.2d 1160, 1163 (La. App. 1992)). Since the Note was transferred along with the Limited Guaranty and Judgment for a single price, an apportionment is necessary to determine the amount of reimbursement in this case.

Under this line of reasoning, Baron argues that in order to extinguish the Judgment, Tauch must pay Baron "the same percentage of the Judgment that Baron paid Regions on the principal amount of the Note." (Rec. Doc. 104 at 9-10). The Court agrees that this approach is sensible. As reflected in the sealed exhibit to Tauch's memorandum, Baron paid Regions $4,749,207, or 55.05% of the balance of the Note, for the package comprising the Note, the Limited Guaranty, and the Judgment. (Rec. Doc. 100-1 at 58).

Accordingly, Tauch may extinguish the Judgment by paying Baron 55% of the amount due under the Judgment, plus the costs and interest listed in the Amended Judgment.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Article 2652 does apply to this case, and that Tauch has a right to extinguish the Judgment against him by paying Baron 55% of the total amount due under the Judgment, plus the costs and interest listed in the Amended Judgment.

New Orleans, Louisiana, this 12th day of March, 2013.

_____
UNITED STATES DISTRICT JUDGE